**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF LOUISIANA**

IN RE:                                            CASE NO. 18-10017

**MICHAEL ALLEN WORLEY**
   *Debtor*                                    CHAPTER 11
**********************************************************************
**MICHAEL ALLEN WORLEY**
   *Plaintiff*

VERSUS                                            ADVERSARY NO. 18-

**WORLEY CLAIMS SERVICES, LLC**
   *Defendant*
**********************************************************************

**COMPLAINT FOR BREACH OF CONTRACT, DAMAGES,
INJUNCTIVE RELIEF AND FOR OTHER APPROPRIATE RELIEF**

**NOW INTO COURT** comes Michael A. Worley ("Debtor" or "Mike Worley"), as Debtor-in-Possession through the undersigned counsel, who moves this Honorable Court to exercise its authority under Rule 65 of the Federal Rules of Civil Procedure, as made applicable through Rule 7065 of the Federal Rules of Bankruptcy Procedure and enjoin Worley Claims Services, LLC from enforcing against the Debtor certain restrictive covenants contained in the agreements described below between the Debtor and Defendant, for damages and other appropriate relief for the following reasons:

1.

Made the defendant-respondent to this petition for injunctive relief is Worley Claims Services, LLC, (the "Defendant" or "WCS").

2.

This Court has jurisdiction over the subject matter of this Complaint pursuant to the provisions of 28 USC §§ 1334 and 157(b)(1) and as a core proceeding under 157 (b)(2)(B) and

157(b)(2)(C). Moreover, as the list of core proceedings under Section 157 is not exclusive, the Debtor shows that this matter should be considered as a core proceeding due to its tremendous impact on the Debtor's ability to earn a living, fund his Plan and pay his creditors.

3.

WCS was founded in 1976 by Mike Worley's father. Mike went to work for the company in May, 1984, after graduating from LSU. After several years working with the company, Mike convinced his father to move towards a catastrophic claims management company. So it began hiring adjusters and managers, began a training department, and began growing the company in that direction.

4.

By 1998 the company had grown to around four hundred (400) fulltime adjusters. By 2005, it had grown to around one thousand two hundred (1,200) fulltime adjusters. In 2008, half the company was sold to Seaport Capital Partners ("Seaport") of New York (an equity company) for around Fifty Million Dollars ($50M). Debtor's father got half that money and retired from the business. The Debtor received the other half and stayed with the business and maintained forty-nine percent (49%) ownership of the company.

5.

WCS continued to grow, and working on such events as the BP Oil Spill in 2010 and 2011, the company had two big years. As a result, Seaport took cash back from the sale of the company.

6.

In 2014, WCS ran an auction process and sold the company again. The company was sold to Aquiline for around Two Hundred Twelve Million Dollars ($212M). The company had

considerable amount of debt on it and Debtor received around ($52M) before taxes – from which the Debtor paid taxes on the money and also paid off some debt.

7.

WCS retained Mike Worley as CEO for about a year and a half pursuant to an Amended and Restated Employment Agreement, dated October 14, 2014.  The company terminated his services as CEO, but continued as Chairman of the Board pursuant to a Second Amended and Restated Employment Agreement ("Second Employment Agreement") entered into in April, 2016.

8.

When Aquiline bought the company – they mentioned they would continue distributions.  Debtor still had an ownership, he had Ten Million (10M) shares of stock in the company.  Aquiline represented that Debtor would continue to receive distributions.  Based on that, Debtor's distributions would have been around Three – Five Million Dollars ($3-5M) per year.

9.

However, during this period – they immediately started buying companies and didn't distribute any capital to the partners – which affected Debtor's income drastically.  WCS eventually reduced Debtor's salary down to around Six Hundred Thousand Dollars ($600K) in the last year he was with the company.

10.

Effective May 16, 2017, the Debtor entered into a Separation Agreement ("Separation Agreement") with Defendant under which he was to receive distributions, benefits and forgiveness of loans.  The Separation Agreement contains a confidentiality provision which the Debtor will ask the Court to review and rule on its application before presenting the Separation Agreement into evidence.  On December 15, 2017, the Defendant discontinued any and all distributions,

benefits and forgiveness of loans to Debtor claiming that as a result of an FBI investigation beginning in September, 2017, that Defendant was no longer obliged to meet its obligations under the Separation Agreement.

11.

The basis for Defendant's right to discontinue its obligations under the Separation Agreement was caused by the Defendant.

12.

On or before September, 2017, one or more of Defendant's employees ("Defendant's Employees") approached the office of the Federal Bureau of Investigation in the Middle District of Louisiana (the "FBI") for the purpose of attempting to make a criminal referral involving Debtor (the "Criminal Referral").

13.

At one or more meetings with the FBI, Defendant's Employees provided financial data of the Defendant and offered statements to the FBI in an attempt to substantiate the Criminal Referral.

14.

All of the data and statements offered in an attempt to support the Criminal Referral were known to Defendant prior to the execution of the Separation Agreement as a result of disclosure to Defendant by Debtor on or before 2016.

15.

All of the data and statements offered in an attempt to support this Criminal Referral and all subsequent matters which were the subject matter of the Criminal Referral resulted in no financial loss whatsoever to the Defendant.

16.

Substantially all of the former executive management team previously hired by Debtor, while in charge of the Defendant, have been terminated by the Defendant. Additionally, substantially all catastrophic claims managers have either been terminated or have resigned.

17.

The management practices established by Debtor with regard to employment practices, bonuses, client relations and work practices of Worley Claim Services, LLC have been abandoned by Defendant.

18.

The Worley Claims Services, LLC that Debtor created no longer exists.

19.

The Debtor filed for relief under Chapter 11 of the U.S. Bankruptcy Code on January 8, 2018. Since that time he has been busy working on a liquidating plan to pay his creditors through the efficient sale of assets at their highest reasonably available value. He has also conferred with various professional contacts in the field of his expertise, claims services and management, regarding the possibility of his returning to work in that field. However, due to the Non-Competition provision of the Second Employment Agreement, the Debtor is concerned that he might be in violation of that provision if he were to work in the claims management business.

20.

The Debtor shows that WCS has breached the Second Employment Agreement and the Separation Agreement ("Agreements") by terminating his benefits and payments thereunder. He has made amicable demand for those benefits and payments. He should be awarded damages in the amount of benefits and payments he is owed by WCS under the Agreements.

21.

Likewise, the Debtor is owed tax distributions for the last quarter of 2017.

22.

Likewise, the Debtor is owed an accounting of 2016 and 2017 tax distributions to him by WCS.

23.

Likewise, the Debtor is owed the return of personal items located at the WCS headquarters as well as at its off premises storage facility located on Robin Hood Drive, Baton Rouge, Louisiana.

24.

Despite repeated requests, the above items owed to the Debtor have not been turned over by WCS.

25.

The breaches by WCS of the Agreements were in bad faith. Consequently, WCS is liable for all the damages, foreseeable or not, that are a direct consequence of its failure to perform under the Agreements.

26.

Because of the breaches by WCS of the Agreements, the Debtor should be freed from any and all restrictions contained in the Agreements and allowed to work in the field of claim services and management. A preliminary injunction should be issued followed by a permanent injunction to that effect.

27.

Rule 65(c) of the Federal Rules of Civil Procedure requires the posting of a bond for the issuance of a TRO and a Preliminary Injunction in an "amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, as that Rule 65 is made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7065, the court may issue a temporary restraining order or preliminary injunction on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c). Based upon the foregoing recitation of the facts, there is very little risk of damage, if any at all, to Defendant if the injunctive relief is granted and the request for permanent injunction is ultimately unsuccessful, which is highly unlikely. The likelihood of success by the Debtor on the merits is substantial. No bond should be required.

28.

In accordance with Rule 65(b), undersigned counsel has forwarded via fax a copy of this filing, the Motion for a Preliminary Injunction, along with the Memorandum in Support hereof to opposing counsel prior to filing the same with the court. Irreparable harm will occur to Debtor, unless the preliminary injunction is granted. The fact of irreparable harm is amply demonstrated by the substantial value of Debtor's services with the industry from which the Defendant is attempting to preclude Debtor.

**WHEREFORE THE DEBTOR PRAYS** that this Court order Defendant to show cause, if any it can, why a preliminary injunction should not be granted herein enjoining any attempt by Defendant from enforcing its Restrictive Covenants contained in the Employment Agreement and Separation Agreement until a final hearing can be held on the permanent injunction;

**THE DEBTOR FURTHER PRAYS** that this Court award damages in the amount of the benefits and payments owed by WCS to the Debtor as well as all consequential damages caused by the breaches of contract by WCS.

**THE DEBTOR FURTHER PRAYS** that this Court enter all further orders that it deems appropriate, including, but not limited to ordering WCS to make tax distributions to the Debtor for the last quarter of 2017; provide an accounting of 2016 and 2017 tax distributions to the Debtor; and return the personal items of the Debtor located on WCS property or at its off premises storage facility located on Robin Hood Drive in Baton Rouge, Louisiana.

**THE DEBTOR FURTHER PRAYS** that this Court enter any and all further orders to prevent the frustration of its orders in this captioned matter, and otherwise necessary to aid in the Court's jurisdiction and orderly management and disposition to final resolution of the captioned matter.

[*Attorney Signature Blocks on Following Page*]

Respectfully submitted,

By: s/ Scott H. Crawford
    SCOTT H. CRAWFORD (#4585)
    8702 Jefferson Hwy., Ste. B (70809)
    P.O. Box 3656
    Baton Rouge, Louisiana  70821
    (225) 343-5290 - Telephone
    (225) 383-5508 – Facsimile

    Attorneys for Michael Allen Worley, *Plaintiff*

- AND -

By: s/ Arthur A. Vingiello
    ARTHUR A. VINGIELLO, *Of Counsel* (#13098)
    THE STEFFES FIRM, LLC
    13702 Coursey Blvd., Building 3
    Baton Rouge, Louisiana  70817
    (225) 751-1751 – Telephone
    (225) 751-1998 – Facsimile

    Attorneys for Michael Allen Worley, *Debtor*

PLEASE ISSUE SUMMONS TO:

**Worley Claims Services, LLC**
**through its Registered Agent**
**Corporation Service Company**
501 Louisiana Ave.
Baton Rouge LA 70802

- AND -

**Worley Claims Services, LLC**
**c/o Benjamin Naftalis**
Latham & Watkins, LLP
53rd at Third
885 Third Ave.
New York, NY  10022-4834

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF LOUISIANA

IN RE:                                    CASE NO. 18-10017

**MICHAEL ALLEN WORLEY**
   *Debtor*                                 **CHAPTER 11**
************************************************************************
**MICHAEL ALLEN WORLEY**
   *Plaintiff*

**VERSUS**                                 **ADVERSARY NO. 18-**

**WORLEY CLAIMS SERVICES, LLC**
   *Defendant*
************************************************************************
**STATE OF LOUISIANA**
**PARISH OF EAST BATON ROUGE**

### VERIFICATION

**BEFORE ME**, the undersigned authority, personally came and appeared:

### MICHAEL ALLEN WORLEY

who, declared under penalty of perjury, that he has read all of the foregoing allegations in the

*Complaint for Breach of Contract, Damages, Injunctive Relief and for Other Appropriate Relief*

and that the allegations and the information contained therein are true and correct.

    DATE:  June 1, 2018                        s/ Michael Allen Worley
                                                           **MICHAEL ALLEN WORLEY**