**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF LOUISIANA**

IN RE:                                                    CASE NO. 18-10017

**MICHAEL ALLEN WORLEY**
    *Debtor*                                          **CHAPTER 11**
**************************************************************************
**MICHAEL ALLEN WORLEY**
    *Plaintiff*

**VERSUS**                                                **ADVERSARY NO. 18-**

**WORLEY CLAIMS SERVICES, LLC**
    *Defendant*
**************************************************************************

**MEMORANDUM IN SUPPORT OF**
**PETITION FOR INJUNCTIVE RELIEF TO ENJOIN**
**AND FOR OTHER APPROPRIATE RELIEF**

    Respectfully submitted,

    By: s/ Scott H. Crawford
        SCOTT H. CRAWFORD (#4585)
        8702 Jefferson Hwy., Ste. B (70809)
        P.O. Box 3656
        Baton Rouge, Louisiana  70821
        (225) 343-5290 - Telephone
        (225) 383-5508 – Facsimile

    Attorneys for Michael Allen Worley, *Plaintiff*

    - AND -

    By: s/ Arthur A. Vingiello
        ARTHUR A. VINGIELLO, *Of Counsel* (#13098)
        THE STEFFES FIRM, LLC
        13702 Coursey Blvd., Building 3
        Baton Rouge, Louisiana  70817
        (225) 751-1751 – Telephone
        (225) 751-1998 – Facsimile

    Attorneys for Michael Allen Worley, *Debtor*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

    I.       Introduction and Background of Court Action by Worley ......................................... 1

    II.      Law and analysis. ....................................................................................................... 3

        (1)    Injunctive Relief. ................................................................................................. 3

        (2)    No Harm to Defendant. ...................................................................................... 4

        (3)    Irreparable Harm. ................................................................................................ 5

        (4)    Debtor has a Substantial Likelihood of Showing Breaches by the Defendant and its Agents. ............................................................................................................... 6

        (5)    Disservice to the Public by the Injunction. ........................................................ 7

        (6)    Bond Requirement. ............................................................................................. 9

    III.     Conclusion ................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*Canal Auth.* 489 F.2d at 576-77 .................................................................................................. 7

*Canal Authority of State of Florida v. Callaway,* 489 F. 2d  567, 572 (5th Cir. 1974)(en banc) ... 4

*Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir. 1994) ................................................................... 4

*eBay, Inc. v. MercExchange, L.L.C.,* 126 S.Ct. 1837, 1839 (2006) ................................................ 4

*Howells v. City of New Orleans,* WL 823723 (E.D. La. 2001) ..................................................... 10

*Marett v. Scott*, 299CV244-D-B, 2000 WL 491857, at *3 (N.D. Miss. Apr. 10, 2000) (citing *Canal Auth. of State of Fla., v. Callaway,* 489 F.2d 567, 576-77 (5th Cir. 1974)) ...................... 7

*Nken v. Holder,* 556 U.S. 418, 434 (2009) .................................................................................... 4

*Opulent Life Church v. City of Holly Springs, Miss.*  697 F.3d 279, 288 (5th Cir. 2012). ............. 9

*Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ................................. 4

*Valley v. Rapides Parish School Board*, 118 F. 3d 1047, 1051 (5th Cir. 1997) ............................ 4

**Statutes**

CHARLES ALAN WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE §2947 ................................................................................................................ 7

*Cherokee Pump & Equipment, Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994); .............. 4

*Federal Practice and Procedure* §2948.1 .................................................................................... 4

FRCP 65 ......................................................................................................................................... 3

**UNITED STATES BANKRUPTCY COURT**

**MIDDLE DISTRICT OF LOUISIANA**

IN RE:                                                                                    CASE NO. 18-10017

**MICHAEL ALLEN WORLEY**

    DEBTOR                                                                    CHAPTER 11

**MEMORANDUM IN SUPPORT OF
PETITION FOR INJUNCTIVE RELIEF TO ENJOIN
AND FOR OTHER APPROPRIATE RELIEF**

MAY IT PLEASE THE COURT:

**I.**      **Introduction and Background of Court Action by Worley**

The injunctive relief sought by Michael Allen Worley and against Worley Claims Services, LLC (the "Defendant") to prevent the Defendant from enforcing the Restrictive Covenants, including, but not limited to, the Covenant Not to Compete contained in its Employment Agreement and Separation Agreement, and any amendments thereto (the "Agreements") against the Debtor.

In 2014, WCS ran an auction process and sold the company. The company was sold to Aquiline for around Two-Hundred Twelve Million Dollars ($212M). The company had considerable amount of debt on it and Debtor received around ($52M) before taxes – from which the Debtor paid taxes on the money and also paid off some debt.

The company kept Debtor on for about a year as CEO, then moved him to Chairman of the Board with very little involvement of the company for the next year and half – eventually pushing Debtor out at the end of May, 2017.

When Aquiline bought the company they mentioned they would continue distributions. Debtor still had an ownership; Ten Million (10M) shares of stock in the company. Aquiline represented that Debtor would continue to receive distributions. Based on past payments, Debtor estimated that the Debtor's distributions would have been around Three – Five Million Dollars ($3-5M) per year.

Effective May 16, 2017, the Debtor entered into a Separation Agreement with Defendant under which he was to receive distributions, benefits and loan forgiveness. On December 15, 2017, the Defendant discontinued any and all payments and benefits, as well as, revoking the loan forgiveness to Debtor claiming a breach of contract by Debtor as evidenced by an FBI Investigation beginning in September, 2017, allegedly having to do with certain banking transactions by Debtor.

The basis for Defendant's alleged breach by Debtor under the Separation Agreement was caused by the Defendant.

On or before September, 2017, one or more of Defendant's employees ("Defendant's Employees") approached the office of the Federal Bureau of Investigation (the "FBI") in the Middle District of Louisiana (the "FBI Investigation") for the purpose of attempted to make a criminal referral involving Debtor (the "Criminal Referral").

At one or more meetings with the FBI, Defendant's Employees provided financial data of the Defendant and offered statements to the FBI in an attempt to substantiate the Criminal Referral.

All of the data and statements offered in an attempt to support the Criminal Referral were known to Defendant prior to the execution of the Separation Agreement.

All of the data and statements offered in an attempt to support this Criminal Referral and all subsequent matters which were the subject matter of the Criminal Referral resulted in no financial loss whatsoever to the Defendant.

The subject matter of all of the data and statements offered by Defendant in an attempt to support the Criminal Referral were disclosed to Defendant by the Debtor on or before 2016.

Substantially all of the former executive management team previously hired by Debtor, while in charge of the Defendant have been terminated by the Defendant.

Substantially all catastrophic claims managers hired originally by Debtor have either been terminated or have resigned.

The Management structure of Worley Claims Services, LLC, put in place by Debtor has been eviscerated by the Defendant.

Debtor has no designs on any of the current employees of Defendant.

The management practices established by Debtor with regard to employment practices, bonuses, client relations and work practices of Worley Claim Services, LLC have been abandoned by Defendant.

The Worley Claims Services, LLC that Debtor created no longer exists.

Through the injunctive powers vested in this Court by FRCP 65 to prevent the enforcement of the Restrictive Covenants, including, but not limited to, the Covenant Not to Compete, contained in the Agreements, the Debtor seeks injunctive relief.

**II.     Law and analysis.**

   **(1)     Injunctive Relief.**

The law is well-settled regarding the requirements that the mover, the Debtor, must satisfy to obtain a preliminary injunction.  The Debtor must show (1) it has a substantial likelihood of

success on the merits, (2) it has a substantial threat of irreparable harm if the injunction is not granted, (3) the threatened injury to mover outweighs threatened harm to the other person, and (4) granting the injunction would not disserve the public interest. *Cherokee Pump & Equipment, Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994); *Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir. 1994); *Canal Authority of State of Florida v. Callaway,* 489 F. 2d  567, 572 (5th Cir. 1974)(en banc).  A preliminary injunction is an 'extraordinary remedy' that should not be granted unless a party demonstrates the above four factors by a clear showing.  *Valley v. Rapides Parish School Board*, 118 F. 3d 1047, 1051 (5th Cir. 1997).

The threat of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction.  11A Charles Alan Wright & Arthur B. Miller, *Federal Practice and Procedure* §2948.1.  The United States Supreme Court has stated that 'the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies …" *Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).  The decision to grant or deny injunctive relief is an act of equitable discretion.  *eBay, Inc. v. MercExchange, L.L.C.,* 126 S.Ct. 1837, 1839 (2006).

In evaluating these factors, likelihood of success on the merits and likelihood of irreparable harm "are the most critical," *Nken v. Holder,* 556 U.S. 418, 434 (2009).

**(2)      No Harm to Defendant.**

The Debtor will most assuredly prevail on the merits of its petition to permanently enjoin the Defendant from enforcing the Covenant not to Compete.

The Agreements cannot be enforced due to a failure of consideration.

The Debtor agreed to abide by the Covenant not to Compete in exchange for compensation in the form of payments, benefits and forgiveness of indebtedness.

The Defendant on December 15, 2017, discontinued all forms of compensation due to the Debtor under the Agreements based upon the alleged Debtor's breach of the Separation Agreement. The Defendant claims that the alleged breach is evidenced by the FBI Investigation.

The FBI investigation has its origins based in statements, conversations and documentation all initiated and provided by Defendant's employees (the "Criminal Referral").

Defendant was well aware of all information provided to the FBI which led to the FBI Investigation well in advance of the execution of the Separation Agreement by and between the Debtor and the Defendant. Debtor fully disclosed all of the subject matter which is the basis of the Criminal Referral. All of this information was disclosed to Defendant by Debtor on or before 2016.

The financial matters that are the subject of the FBI investigation resulted in no financial loss or harm whatsoever to Defendant.

As a result, any assertions by Defendant that Debtor breached one or more of the Agreements is disingenuous.

To the contrary, the breach was committed by the Defendant through its failure to make distributions, provide benefits and loan forgiveness, as required of the Defendant by the Separation Agreement.

**(3)    Irreparable Harm.**

When Debtor was in charge of Worley Claims Services, LLC, the Debtor's annual earnings averaged between $3,500,000.00 to $5,000,000.00, based upon historical results.

Those earnings were based primarily on claims services provided during hurricane season, which is estimated to begin this year on or about June 1, 2018, by the National Weather Service.

The claims business is the only business in which the Debtor has any experience, and therefore, there is no other trade or occupation in which the Debtor could possibly command similar compensation.

To cause Debtor to be unable to participate in catastrophic claim services this hurricane season would certainly cause Debtor irreparable harm.

**(4)** **Debtor has a Substantial Likelihood of Showing Breaches by the Defendant and its Agents.**

Debtor seeks to permanently enjoin the Defendant from enforcing provisions of the Agreements, including a Covenant Not to Compete in favor of the Defendant.

As a partial consideration for his separation from the Defendant, Debtor was to receive distributions and benefits, as well as, forgiveness of indebtedness in the approximate amount of $1,900,000.00 owed by Debtor to Defendant (the "Loan Forgiveness").

In December of 2017, the Defendant discontinued all salary and benefits owed to debtor under the Separation Agreement and revoked the Loan Forgiveness claiming a breach of contract by Debtor as allegedly evidenced by the FBI Investigation.

The FBI Investigation was prompted by the Criminal Referral which was made by the Defendant.

For the Defendant to contend that a breach of the Separation Agreement was committed by Debtor citing the FBI investigation is truly disingenuous.

To the contrary, Defendant, unjustifiably discontinued payments in the form of distributions and benefits and revoked the Loan Forgiveness, and as a result, Defendant breached the Separation Agreement.

As a result of the Defendant's breach of the Separation Agreement, Debtor should no longer be required to abide by the Restrictive Covenants, and in particular, the Covenant Not to Compete; all contained in the Separation Agreement.

The "Fifth Circuit has instructed that when considering whether a movant has demonstrated substantial likelihood of prevailing on the merits, courts must recognize that the importance of this requirement varies with the relative balance of the threatened hardships facing each of the parties." *Marett v. Scott*, 299CV244-D-B, 2000 WL 491857, at *3 (N.D. Miss. Apr. 10, 2000) (citing *Canal Auth. of State of Fla., v. Callaway,* 489 F.2d 567, 576-77 (5th Cir. 1974)). Thus a "showing that plaintiff will be more severely prejudiced by a denial of the injunction than defendant would be [if granted]…lower[s] the standard that must be met" in showing "some probability of winning on the merits." *Canal Auth.* 489 F.2d at 576-77 (citing CHARLES ALAN WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE §2947). That is precisely the case here. Granting the motion will avoid severe *permanent* harm to Debtor while causing *minimal harm* to Defendant. Thus, the Court need not apply an exacting standard in examining likelihood of success on the merits.

**(5)    Disservice to the Public by the Injunction.**

In this case, the issuance of the injunction will, conversely, be a positive service to the public.

As a result of the radical change of management and management practices by the Defendant, as well as, the significant diversification by Defendant, through acquisitions of new companies, the Defendant's business model has substantially changed.

Defendant's primary business is no longer to specialize in catastrophic claims.

If Debtor were to form a business that specialized in catastrophic claims, that would be of great service to the public.

Victims of disasters are dependent on catastrophic claims companies to settle their claims in a timely manner so that they may have their property and belongings restored at the earliest possible date.

A company with a primary mission to provide such services provides essential public services.

Further, Defendant is aware of only one other claims company in the United States providing substantial catastrophic claims services.

The Debtor's reentry into the catastrophic claims services market would create needed competition in an industry which currently is, in essence, a duopoly.

As previously indicated, the Defendant's current executive management structure and business model has changed radically over the past two years.

To allow Debtor to reenter the catastrophic claims market would in no way be damaging to the Defendant.  Debtor would not solicit one employee away from Defendant's current employee roster.  Further, the Debtor has no interest in pursuing a business model like that of the Defendant.

The Defendant manufactured the alleged breach by Debtor in order to save money in the form of distributions, benefits and the revocation of the Loan Forgiveness.

Obviously, Defendant was not that concerned about enforcing its Restrictive Covenants, including the Covenant not to Compete.  Otherwise it would not have entered into this scheme it hatched to make the Criminal Referral and risk being found out, thereby causing the scheme to be

exposed resulting in the Defendant being determined to have breached the Separation Agreement, and not the Debtor.

As a result, the risk to Defendant is *de minimis*, if injunctive relief is granted and the request for permanent injunction is ultimately unsuccessful.

The injunctive relief sought will not, "disservice the public interest." *Opulent Life Church v. City of Holly Springs, Miss*. 697 F.3d 279, 288 (5th Cir. 2012).

**(6)    Bond Requirement.**

There is very little risk of damage, if any at all, to Defendant if the injunctive relief is granted and the request for permanent injunction is ultimately unsuccessful.

The type of business that the Debtor would enter into would be substantially dissimilar to that of the Defendant.

The executive management that the Debtor assembled to operate Worley Claim Services, LLC have either resigned or been terminated in mass.

All of the management practices established by the Debtor, including employment practices, bonus policies, client relations and work practices of Worley Claims Services, LLC have been abandoned by Defendant.

All catastrophic claims managers originally hired by the Debtor have been terminated by Defendant or have resigned.

The Defendant, through numerous acquisitions, in an attempt to diversify has substantially changed the business model and mission of Worley Claims Services, LLC.

The Worley Claims Services LLC that Debtor created no longer exists.

Therefore, the reentry of the Debtor into the catastrophic claims business would not harm the Defendant in the event the injunctive relief is granted and the request for permanent injunction is ultimately unsuccessful.

## III.     Conclusion

The facts set forth above describe the odyssey of Worley Claims Services, LLC, apparently weaving in and out of the ethical and legal bounds, in hopes of achieving one end - additional money by terminating Debtor and precluding him from competing against Defendant.  Defendant has embarked on this increasingly bold journey disregarding anything or any person whom it perceived as interfering with its plan.  This motion seeks to take Defendant to the end of its untoward journey.

The Debtor now urges this Court to exercise its authority through FRCP Rule 65 and enjoin Defendant from enforcing the Restrictive Covenants, for all the reasons set forth above, and to enter all further orders that are necessary and appropriate to protect its orders.

Respectfully submitted,

By: s/ Scott H. Crawford
SCOTT H. CRAWFORD (#4585)
8702 Jefferson Hwy., Ste. B (70809)
P.O. Box 3656
Baton Rouge, Louisiana  70821
(225) 343-5290 - Telephone
(225) 383-5508 – Facsimile

Attorneys for Michael Allen Worley, *Plaintiff*

- AND -

By: s/ Arthur A. Vingiello
ARTHUR A. VINGIELLO, *Of Counsel* (#13098)
THE STEFFES FIRM, LLC
13702 Coursey Blvd., Building 3
Baton Rouge, Louisiana  70817
(225) 751-1751 – Telephone
(225) 751-1998 – Facsimile

Attorneys for Michael Allen Worley, *Debtor*