# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | |
| **MICHAEL ALLEN WORLEY** | **CASE NO. 18-10017** |
| *Debtor* | **CHAPTER 11** |

| | |
|---|---|
| **MICHAEL ALLEN WORLEY** | |
| | **ADVERSARY NO. 18-01023** |
| *Plaintiff* | |
| versus | **JUDGE DOUGLAS D. DODD** |
| **WORLEY CLAIMS SERVICES, LLC** | |
| *Defendant* | |

## ANSWER AND DEFENSES

**NOW COMES** Defendant Worley Claims Services, LLC ("WCS") and responds to the Complaint for Breach of Contract, Damages, Injunctive Relief, and for Other Appropriate Relief filed by Michael A. Worley ("Worley") as follows:

## I.

## DEFENSES

WCS asserts the following affirmative and other defenses, but does not assume any burden of production or proof unless required by law:

1.

**No Distributions or Benefit Payments Owed to Worley due to Cause Events**

In the Separation Agreement, Worley agreed that WCS would be entitled to cease making distribution and benefit payments to him in the event of any act by him that would have given WCS Good Cause to terminate his Second Amended and Restated Employment Agreement ("Employment Agreement") pursuant to subsections (2), (3), or (4) of section 4(c) of the Employment Agreement, which included:

> (2) dishonesty, fraud or misrepresentation which was intended to result in gain or personal enrichment for [Worley] at the expense of the [WCS]; (3) [Worley's] commission of any act that is reasonably likely to lead to indictment, conviction of, or a plea of *nolo contendere* or guilty to a felony; or (4) the engaging by [Worley] in conduct which is demonstrably and materially injurious to [WCS], monetarily or otherwise…

2.

WCS was entitled to immediately cease making distribution and benefits payments to Worley because he engaged in a check kiting scheme that led to an FBI investigation into his actions that WCS understands is ongoing. WCS has had to devote substantial time, money, and human resources to respond to the FBI's subpoena and to otherwise cooperate with its investigation and has lost business opportunities by virtue of the requirement to disclose any criminal investigations of current or former principals of the company in response to requests for proposals for work.

3.

WCS was entitled to immediately cease making distribution and benefit payments to Worley because he engaged in an *ultra vires* and self-interested lease transaction in which he effectively extended a WCS lease that was scheduled to expire by its terms on December 19,

2017 until September 30, 2030. Worley's conduct in connection with the lease transaction was dishonest and fraudulent and was demonstrably and materially injurious to WCS.

**No Distribution or Benefit Payments**
**Owed to Worley Due to Breach of the Restrictive Covenants**

4.

In the Separation Agreement, Worley agreed that WCS would be entitled to cease making distribution and benefit payments to him upon any breach by him of the Restrictive Covenants in his Employment Agreement or the Purchase, Sale and Contribution Agreement by and among WCS, Worley, Advantage Capital Community Development Fund, L.L.C., SCP Worley Holdings, L.L.C., Aquiline Worley Purchaser LLC and Aquiline Worley Parent LLC dated October 6, 2014 ("Purchase Agreement").

5.

Worley breached the Restrictive Covenants in the Employment Agreement and Purchase Agreement by providing consulting services on the Restore Louisiana project for which he was compensated approximately $15,000. Because of Worley's conduct, WCS was relieved of the obligation to continue making distribution and benefit payments to him.

**No Breach of the Separation Agreement by WCS**

6.

WCS has not breached, or failed to perform, any obligation in the Separation Agreement.

**No Obligations or Breach of the Employment Agreement**

7.

WCS has no continuing obligations to Worley under the Employment Agreement. Thus, it could not have and did not breach that agreement, as alleged.

**Cause and Consideration**

8.

Worley had cause to enter into the Separation Agreement and that cause did not fail by virtue of any Cause Event occurring within the meaning of the Separation Agreement.

9.

Worley has no legal right or factual basis to invalidate the Restrictive Covenants in the Employment Agreement or Purchase Agreement for failure of consideration.

10.

Worley had cause to enter into the Employment Agreement and Purchase Agreement and received consideration pursuant to both of those agreements.

**No Entitlement to Mandatory Preliminary Injunctive Relief**

11.

The preliminary injunctive relief Worley seeks is mandatory in nature because he seeks to change the *status quo*, not to preserve it.  Worley cannot meet his burden to prove that he is clearly entitled to the mandatory preliminary injunctive relief sought because he cannot demonstrate that: (1) he is likely to succeed on the merits of his claim; (2) he will suffer irreparable harm if the requested injunction does not issue; (3) the harm he alleges he will suffer if the requested injunction does not issue warrants depriving WCS of the benefit for which it bargained; or (4) denying the injunction would disserve the public interest.

**Dissolution Not an Appropriate Remedy**

12.

Dissolution of the Separation Agreement is not an appropriate remedy in the event of a breach (which WCS denies) because WCS has already performed under the agreement and acted

in good faith and because dissolving the agreement would allow Worley to benefit from his own misconduct by escaping the obligations he undertook.

### No Entitlement to Tax Distributions from WCS

13.

Worley sold all of his membership interest in WCS in 2014. Consequently, WCS had no obligation to make any tax distributions to him in 2016 or 2017, as alleged.

14.

Worley is not entitled to any distributions, benefits, or loan forgiveness pursuant to the Employment Agreement, as alleged.

### Accord, Satisfaction, and Release

15.

Worley is not entitled to the tax distributions he seeks to the extent he released his right to those distributions in the Separation Agreement.

### Estoppel and Unclean Hands

16.

Worley has unclean hands and should be estopped from being awarded the injunctive relief, declaratory relief, and damages he seeks because he has breached the Restrictive Covenants; engaged in conduct that is reasonably likely to lead to his indictment or criminal plea, as evidenced by his recent request for approval to engage criminal counsel to represent him; engaged in dishonest and fraudulent conduct; engaged in conduct that is demonstrably and materially injurious to WCS; and to the extent he has breached the Covenant Not to Sue in the Separation Agreement by suing to seek tax distributions in violation of the terms of his Release of Claims.

**Failure to Mitigate Alleged Damages**

17.

Worley's alleged damages must be reduced to the extent he failed to mitigate them by seeking employment not prohibited by the Restrictive Covenants in the Employment Agreement and Purchase Agreement.

**Indemnity and Attorneys' Fees**

18.

Worley is obligated to indemnify WCS and pay its attorneys' fees and costs incurred in defending against his claim for tax distributions to the extent he released those claims in the Separation Agreement.

**Offset, Setoff and Recoupment**

19.

WCS affirmatively pleads the defenses of offset, setoff and/or recoupment to the extent they are applicable.

**Additional Defenses**

20.

WCS hereby gives notice that it intends to rely upon any other defense that may become available or appear during discovery proceedings in this case and hereby reserves the right to amend this Answer to assert any such defense.

## II.

## ANSWER

**AND NOW** in response to the specific allegations in the Complaint, WCS avers:

1.

WCS admits the allegations contained in Paragraph 1 of the Complaint.

2.

WCS denies the allegations contained in Paragraph 2 of the Complaint as written, but admits the bankruptcy court has jurisdiction over this dispute and confirms pursuant to Fed. R. Bankr. P. 7012(b) that it consents to the entry of final orders or judgment by the bankruptcy court.

3.

WCS denies the allegations contained in Paragraph 3 of the Complaint for lack of sufficient information to justify a belief in them, except to admit that Worley's father founded WCS; Worley worked for WCS; and WCS is engaged in the catastrophic claims management business.

4.

WCS denies the allegations contained in Paragraph 4 of the Complaint for lack of sufficient information to justify a belief in them, except to admit that Seaport Capital Partners purchased a membership interest in WCS in 2008; Worley and his father received proceeds from the sale; Worley's father retired from WCS; and Worley remained employed by WCS and held a 49% membership interest in WCS after the sale to Seaport.

5.

WCS denies the allegations contained in Paragraph 5 of the Complaint as written, but admits that WCS worked on the BP Oil Spill.

6.

WCS denies the allegations in Paragraph 6 of the Complaint as written and for lack of sufficient information to justify a belief in them, except to admit that WCS, Worley, Advantage Capital Community Development Fund, L.L.C., SCP Worley Holdings, L.L.C., Aquiline Worley Purchaser LLC and Aquiline Worley Parent LLC entered into the Purchase Agreement, which speaks for itself and is the best evidence of its content.

7.

WCS denies the allegations in Paragraph 7 as written, but admits that WCS employed Worley as CEO and Chairman of its Board pursuant to an Amended and Restated Employment Agreement dated October 14, 2014, which speaks for itself and is the best evidence of its content, and that WCS employed Worley as Chairman of its Board pursuant to the Employment Agreement, which speaks for itself and is the best evidence of its content.

8.

WCS denies the allegations contained in Paragraph 8 of the Complaint.

9.

WCS denies the allegations contained in Paragraph 9 of the Complaint for lack of sufficient information to justify a belief in them.

10.

WCS denies the allegations contained in Paragraph 10 of the Complaint, except to admit that it entered into the Separation Agreement with Worley on May 22, 2017, which speaks for

itself and is the best evidence of its content; that the agreement contains a confidentiality provision; and that WCS was relieved of the obligation to continue making distributions and providing benefits and forgiving a loan to Worley because Cause Events occurred within the meaning of the agreement and because Worley violated the Restrictive Covenants in the agreement.

11.

WCS denies the allegations contained in Paragraph 11 of the Complaint.

12.

WCS denies the allegations contained in Paragraph 12 of the Complaint for lack of knowledge or information sufficient to justify a belief in the truth of the matters asserted.

13.

WCS denies the allegations contained in Paragraph 13 of the Complaint, except to admit that it received a subpoena from the FBI and it made a return on the subpoena and cooperated with the FBI's investigation.

14.

WCS denies the allegations contained in Paragraph 14 of the Complaint.

15.

WCS denies the allegations contained in Paragraph 15 of the Complaint.

16.

WCS denies the allegations contained in Paragraph 16 of the Complaint as written, but admits that some management team members and catastrophic claims managers who were employed when Worley worked for WCS have been terminated from their employment or have resigned.

17.

WCS denies the allegations contained in Paragraph 17 of the Complaint for lack of knowledge or information sufficient to justify a belief in the truth of the matters asserted.

18.

WCS denies the allegations contained in Paragraph 18 of the Complaint for lack of knowledge or information sufficient to justify a belief in the truth of the matters asserted.

19.

WCS admits that Worley would be in violation of the non-compete provision of the Employment Agreement, as made applicable to him by the Separation Agreement, if he were to work in the claims management business in the territory specified in that agreement. WCS denies the remaining allegations contained in Paragraph 19 of the Complaint for lack of knowledge or information sufficient to justify a belief in the truth of the matters asserted, except to admit that Worley filed for relief under Chapter 11 of the U.S. Bankruptcy Code on January 8, 2018 and that the Court ordered that a Chapter 11 trustee be appointed, without objection by Worley. Further answering, the record in the bankruptcy proceedings, of which the Court may take judicial notice, speaks for itself and is the best evidence of its content and of Worley's actions in the proceedings.

20.

WCS denies the allegations contained in Paragraph 20 of the Complaint, except to admit that Worley has demanded benefits and payments.

21.

WCS denies the allegations contained in Paragraph 21 of the Complaint.

22.

WCS denies the allegations contained in Paragraph 22 of the Complaint.

23.

WCS denies the allegations contained in Paragraph 23 of the Complaint, except to admit that Worley still has not collected all of his personal property located at WCS's premises, although WCS has invited him to do so.

24.

WCS denies the allegations contained in Paragraph 24 of the Complaint.

25.

WCS denies the allegations contained in Paragraph 25 of the Complaint.

26.

WCS denies the allegations contained in Paragraph 26 of the Complaint.

27.

WCS denies the allegations contained in Paragraph 27 of the Complaint, except to admit that Rule 65(c) of the Federal Rules of Civil Procedure and Federal Rule of Bankruptcy Procedure 7065 pertain to the issuance of bonds in injunction proceedings. Those rules speak for themselves and are the best evidence of their content.

28.

WCS denies the allegations contained in Paragraph 28 of the Complaint, except to admit that Worley's counsel faxed it a copy of the Motion for Preliminary Injunction and supporting memorandum.

29.

WCS denies the allegations contained in the Prayer of Worley's Complaint.

30.

WCS denies all allegations contained in any unnumbered paragraphs of Worley's Complaint.

WHEREFORE, WCS prays that this Answer and Defenses be deemed good and sufficient and that after due proceedings are had that Worley's claims against WCS be dismissed, with prejudice, at Worley's sole cost, and for such other equitable relief as the Court deems just and proper.

Respectfully submitted:

**ADAMS AND REESE LLP**

By:/s/*John M. Duck*
John M. Duck, LA Bar Roll No. 5104
Elizabeth A. Roussel, La. Bar Roll No. 27943
ADAMS AND REESE LLP
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Mr. Duck's Ph:  (504) 585-0226
Mr. Duck's Fax: (504) 566-0210
Ms. Roussel's Ph: 504-585-0445
Ms. Roussel's Fax: 504-566-0210
Email: john.duck@arlaw.com
Email: elizabeth.roussel@arlaw.com

AND

        Patrick L. McCune, La. Bar Roll No. 31863
        ADAMS AND REESE LLP
        450 Laurel Street, Suite 1900
        Baton Rouge, LA 70801
        Telephone: (225) 378-3215
        Fax: (225) 336-5110
        Email: patrick.mccune@arlaw.com

*Attorneys for Worley Claims Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion has been served upon all persons or entities receiving notice via the court's CM/ECF electronic filing system, including, but not limited to, the following:

<u>Court Electronic notification</u>

- Scott Holland Crawford, counsel for plaintiff, Michael Allen Worley, scott@crawfordlaw.legal
- Arthur A. Vingiello, counsel for plaintiff, Michael Allen Worley, avingiello@steffeslaw.com

        */s/ John M. Duck*
        John M. Duck