# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

IN RE:

MICHAEL ALLEN WORLEY                      CASE NO. 18-10017

*Debtor*                                  CHAPTER 11

---

MICHAEL ALLEN WORLEY

                                          ADVERSARY NO. 18-01023

*Plaintiff*

versus

WORLEY CLAIMS SERVICES, LLC

*Defendant*

---

## OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**MAY IT PLEASE THE COURT:**

Worley Claims Services, LLC ("WCS"), defendant in the above-captioned adversary matter, respectfully opposes plaintiff Michael Allen Worley's ("Worley's") motion for preliminary injunctive relief (Adv. Dkt. No. 2) for the following reasons:

### I.    Background and Procedural History.

Worley began working for WCS in 1984. On May 19, 2008, he entered into an employment agreement with WCS. At the time, Worley also owned a membership interest in WCS.

Pursuant to a Purchase, Sale and Contribution Agreement ("Purchase Agreement") dated October 6, 2014, Aquiline Worley Parent, LLC acquired 100% of the membership interest in

WCS. Thereafter, on October 31, 2014, Worley entered into an Amended and Restated Employment Agreement ("Amended Employment Agreement") with WCS to restate the terms of his employment with WCS in connection with the transaction. Pursuant to the Amended Employment Agreement, Worley agreed to serve as the CEO and Chairman of the Board of WCS.

On May 3, 2016, WCS and Worley entered into a Second Amended and Restated Employment Agreement ("Second Amended Employment Agreement"). After the parties executed the Second Amended Employment Agreement, Worley no longer served as WCS's CEO, but continued to serve as the Chairman of its Board.

On May 22, 2017, WCS and Worley entered into a Separation Agreement. In it, Worley agreed to continue to honor the Restrictive Covenants in the Purchase Agreement and Second Amended Employment Agreement, including covenants not to compete with WCS or to solicit its customers or employees, and also agreed to release certain claims against WCS. For its part, WCS agreed to forgive certain loans and to make distributions and pay certain benefits to Worley. However, the parties agreed that WCS would be relieved of the obligation to forgive Worley's loans and to make distributions and pay certain benefits to him if he breached the Restrictive Covenants. The parties also agreed that WCS would not have to forgive Worley's loans or make distributions or benefit payments to him if a Cause Event occurred. (*Separation Agreement at ¶10*)

> The Separation Agreement defined "Cause Event," in pertinent part, as follows:
>
> Notwithstanding the foregoing, (i) upon any breach of violation by the Executive of any term of this Agreement or the Restrictive Covenants (in each case, whether or not material), or (ii) in the event of any act by the Executive that would have given the Company Good Cause (as such term is defined in the Employment Agreement) to terminate the Employment Agreement pursuant to subsections (2), (3) or (4) of Section 4(c) of the Employment Agreement (without regard to the

2

parenthetical in subsection (4)) had the Executive continued to be an employee of the Company (any such event described in the foregoing clause (ii), a "**Cause Event**"), the payment of the Severance Payments and Severance Benefits will immediately cease, and the Executive shall reimburse the Company for any portion of the Severance Payments or the Severance Benefits theretofore paid, in each case without any further action or notice required on the part of the Company or any other party.

(*Separation Agreement at ¶3(d)*).[1] In other words, the Separation Agreement defined a Cause Event with reference to Worley's Second Amended Employment Agreement, which provided that a Cause Event would occur if Worley: (1) engaged in any dishonesty, fraud or misrepresentation intended to result in either gain or personal enrichment at the expense of the WCS, (2) committed any act reasonably likely to lead to indictment, conviction of, or plea of *nolo contendere* or guilty to a felony, or (3) engaged in conduct that is demonstrably and materially injurious to the WCS, monetarily or otherwise. (*Second Amended Employment Agreement at §4(c)(2)-(4)*)

After the parties entered into the Separation Agreement in May 2017, WCS learned information about which it was not aware before the parties entered into the Separation Agreement that constituted Cause Events. Worley also breached the Restrictive Covenants.

In December 2017, WCS ceased making distributions and paying benefits to Worley.

On June 1, 2018, Worley initiated these adversary proceedings by filing a Complaint seeking damages, injunctive and other equitable relief. Specifically Worley's Complaint seeks:

- To enjoin enforcement of the restrictive covenants in his Separation Agreement;
- Damages for alleged breaches of his Second Amended Employment Agreement;
- Damages for alleged breaches of the Separation Agreement;
- Tax distributions for the last quarter of 2017;
- An accounting of 2016 and 2017 tax distributions to him; and
- The return of personal property.

---

[1] The Separation Agreement defined the term "Employment Agreement" to mean the Second Amended Employment Agreement.

3

With respect to his claim for injunctive relief particularly, Worley alleges that the Court should preliminarily and permanently enjoin enforcement of the Restrictive Covenants incorporated in the Separation Agreement because: (1) the Separation Agreement "cannot be enforced due to a failure of consideration;" and (2) WCS breached the terms of the Separation Agreement by failing to pay him distributions and benefits.

## II. Worley Cannot Prove His Entitlement to a Preliminary Injunction.

A preliminary injunction is an extraordinary remedy that only should issue if the movant shows: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest. *Ridgely v. Federal Emergency Management Agency*, 512 F.2d 727 (5th Cir. 2008). "The denial of a preliminary injunction will be upheld where the movant has failed sufficiently to establish *any one* of the four criteria." *Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 53, 56 (5th Cir. 1990). [Emphasis in original.]

Significantly, the burden of proof differs based on whether the mover is seeking a prohibitory or a mandatory injunction. A mandatory preliminary injunction is one that seeks to alter the status quo prior to litigation rather than maintain it. *Texas v. Ysleta Del Sur Pueblo*, 2018 U.S. Dist. LEXIS 54042, *24-25 (W.D. Tex. Mar. 29, 2018). "The Fifth Circuit has repeatedly held that **mandatory injunctions warrant an even higher standard than prohibitory injunctions**." *Ysleta*, 2018 U.S. Dist. LEXIS 54042 at *25 quoting *Justin Indus., Inc. v. Choctaw Sec., L.P.*, 920 F.2d 262, 268 (5th Cir. 1990) ("[B]ecause [the plaintiff] is seeking a mandatory injunction, it bears the **burden of showing a clear entitlement to the relief** under the facts and the law.") Mandatory preliminary injunctions are "particularly disfavored,

and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976); *see also Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971), quoting *Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958) ("[W]hen a plaintiff applies for a mandatory preliminary injunction, such relief 'should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party.'")

As discussed below, Worley cannot prove his entitlement to a preliminary injunction because he cannot clearly establish that he has a substantial likelihood of prevailing on the merits; that he will suffer irreparable injury if the injunction is not granted; that the threat of any injury he claims he will suffer outweighs any harm that will result to WCS if the injunction is granted; or that the injunction will not disserve the public interest.

    **a. Worley is not likely to succeed on the merits of his claim.**

The United States Fifth Circuit Court of Appeal and district courts within it have recognized that a paramount consideration in deciding whether a plaintiff is entitled to a preliminary injunction is whether he can demonstrate that he is likely to succeed on the merits of his claims. *See, e.g., Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005) (analogizing stays to preliminary injunctions and stating that in "determining entitlement to a stay, likelihood of success on the merits is arguably the most important element"); *Defense Distributed v. United States Dep't of State*, 865 F.3d 211, 212-23 (5th Cir. Mar. 15, 2017) (recognizing in the dissent that the Fifth Circuit has "stressed the importance of determining the likelihood of success on the merits—calling it 'arguably the most important factor' in determining a party's entitlement to a preliminary injunction."); *Thompson v. AG of the State of Miss.*, 129 F.Supp.3d 430, 436 (S.D. Miss. Sept. 9, 2015) (noting that "substantial likelihood of success is the most important element

of the preliminary injunction standard" and denying the plaintiffs' request for injunctive relief where they failed to make such a showing). Worley gave this critical element limited attention in his memorandum in support of his request for a preliminary injunction and cited to no legal authority to support a finding that the Restrictive Covenants incorporated in the Separation Agreement are unenforceable due to either a "failure of consideration" or a breach of contract. As explained below, he cannot make such a showing.

### i. Worley cannot prove any failure of cause.

The Separation Agreement provides that it shall be governed by Louisiana law and choice of law principles dictate that Louisiana law should be applied to determine questions concerning its validity. *See, e.g., Bluebonnet Hotel Ventures, L.L.C. v. Wachovia Bank, N.A.,* 2011 U.S. Dist. LEXIS 158525 (M.D. La. Sept. 28, 2011) (explaining that "questions of formation and validity logically come before questions regarding construction and interpretation" and that Louisiana Civil Code articles 3537 and 3515 together state that "Louisiana courts must apply the law of the State whose policies would most seriously be impaired if its law were not applied, which takes into account the relationship and contacts of the State to the parties and transaction, the nature and purpose of the contract, and other policy needs.")

In Louisiana, a claim for failure of consideration is more properly termed a claim for failure of cause. Louisiana law recognizes that "an obligation cannot exist without a lawful cause" and that "[c]ause is the reason why a party obligates himself." La. Civ. Code art. 1966 and 1967. Importantly, as the comments to Article 1967 explain:

> Under this Article, "cause" is not "consideration." The reason why a party binds himself need not be to obtain something in return or to secure an advantage for himself. An obligor may bind himself by a gratuitous contract, that is, he may obligate himself for the benefit of the other party without obtaining any advantage in return.

6

La. Civ. Code art. 1967, Comment (c). "Louisiana does not follow the common law tradition that requires consideration to effect an enforceable contract. Rather, the mere will of the parties will bind them, without what a common law court would consider to be consideration to support a contract, so long as the parties have a lawful 'cause.'" *Aaron & Turner, LLC v. Perret*, 22 So.3d 910, 915 (La. App 1 Cir. 5/4/09). Moreover, "the cause need not have any economic value." *Perret*, 22 So.3d at 915. The "difference has been analogized to a civilian contract-consent approach compared to a common law contract-bargain approach." *Id*.

Here, the Separation Agreement was supported by valid cause.[2] Both Worley and WCS desired to enter into it and had a lawful reason to do so. Worley's real complaint is that after the parties contracted, WCS ceased making payments to him and stopped providing him with other benefits.[3] In short, Worley complains that WCS breached, or failed to perform, certain contractual obligations.[4] However, Louisiana courts have consistently held that nonperformance of a promise or obligation constitutes a breach of contract, not a failure of cause. *See, e.g., Perret, supra,* at 916; *see also Sound/City Recording Corp. v. Solberg*, 443 F.Supp. 1374,1380 (W.D. La. Feb. 1, 1978) ("Under Louisiana law, nonperformance of a promise constitutes a breach of an obligation, rather than a failure of cause or consideration.") Consequently, Worley cannot meet his burden to prove that the Restrictive Covenants should not be enforced due to any alleged failure of cause.

---

[2] The Second Amended Employment Agreement and Purchase Agreement containing the Restrictive Covenants also were supported by cause.
[3] Of course, Mr. Worley knew from the outset that his entitlement to receive all distributions, benefits, and loan forgiveness was contingent on no Cause Event occurring during the contract term. The fact that the contingency the parties anticipated might occur did, in fact, occur, cannot possibly result in a finding that the parties' cause for entering the Separation Agreement at the outset failed.
[4] Notably, Mr. Worley received substantial compensation and other benefits under the Separation Agreement before WCS determined that Cause Events had occurred that relieved it of the obligation to continue performing certain of its obligations under the agreement. Mr. Worley thus far has not returned or forfeited anything he already received from WCS pursuant to the terms of the Separation Agreement.

7

### ii. Worley cannot prove any breach of contract.

As stated above, the gravamen of Worley's complaint is that WCS should not be allowed to enforce the Restrictive Covenants incorporated in the Separation Agreement because it has ceased making payments to him and providing him with benefits under the agreement. But the mere fact that WCS stopped providing Worley with benefits and payments—which WCS does not dispute—does not establish that WCS breached the Separation Agreement. The Separation Agreement expressly contemplated that WCS could stop making such payments under certain circumstances. If WCS is no longer obligated to provide Worley with distributions and benefits pursuant to the terms of the Separation Agreement, then its failure to do so necessarily is not a breach of contract. This is a factual issue for the Court's determination.

Additionally, Louisiana law provides more than one possible remedy in the event of a contract breach. One remedy is damages. Another is specific performance. And another is dissolution. La. Civ. Code art. 1926 ("On the breach of an obligation to do, or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given when they have accrued, according to the rules established in the following section.") To demonstrate that WCS should be enjoined from enforcing the Restrictive Covenants, Worley must demonstrate *both* that: (1) WCS breached the Separation Agreement *and* (2) he is entitled to the remedy of dissolution as a result.

### 1. Worley is not likely to prevail on his claim that WCS breached the Separation Agreement.

To establish that he is likely to succeed on the merits of his breach of contract claim, Worley first must present evidence to prove that WCS is obligated to continue making distributions and providing benefits to him. WCS will present evidence at the preliminary

injunction hearing to demonstrate that is not the case. Specifically, WCS will present evidence to show that in September 2017, after Worley signed the Separation Agreement, it received an FBI subpoena in connection with a federal investigation into Worley's actions. In responding to the FBI's subpoena and cooperating with its investigation, new information came to light relating to Worley's misuse of WCS's funds for his personal benefit and other misconduct. WCS also will present evidence to show that after Worley signed the Separation Agreement, WCS learned information relating to Worley's fraudulent and self-serving conduct in purporting to extend a lease for real property that WCS was occupying that was set to expire in December 2017 until 2030—all without actual or apparent authority and without WCS's knowledge. Finally, WCS expects the evidence will show that Worley breached the Restrictive Covenants. In light of Worley's conduct described above, WCS was relieved of the obligation to forgive Worley's loan and to provide him with separation payments and benefits.

### 2. Worley is not entitled to dissolution of the contract even upon proof of a breach.

Under Louisiana law, the court has the discretion to determine whether to dissolve a contract upon proof that it has been breached. *Waseco Chemical & Supply Co. v. Bayou State Oil Corp.*, 371 So.2d 305, 309 (La. App. 2 Cir. May 1, 1979) (citing Litvinoff, 7 Louisiana Civil Law Treatise, Book 2 at 513, 514 (1975) ("The need for judicial discretion in the matter of contract dissolution is firmly established in the Louisiana jurisprudence…"). Dissolution is not an "absolute right." *Watson v. Feibel*, 71 So. 585, 591 (La. 1916). Nor is it always an appropriate remedy. *Waseco*, 371 So.2d at 308 (noting that while a party "has the choice to demand dissolution" instead of performance, "it is not unquestionable that he will obtain it."). Indeed, commentators have "caution[ed] against casual dissolution of contracts" and recognized "that the remedy of contract dissolution is not to be regarded as a convenient way for a party to

9

unburden himself of the contract." *Robertson v. Buoni*, 504 So.2d 860, 862 (La. Apr. 6, 1987) (citing Litvinoff, 7 Louisiana Civil Law Treatise, Book 2 at 508 (1975)).

Consistent with these principles, courts have held that when the alleged basis for dissolution was foreseeable at the time the contract was formed, dissolution is less likely to be an appropriate. *Waseco*, 371 So.2d at 309. This authority militates against dissolving the Separation Agreement in this case where the parties expressly agreed that WCS would be relieved of certain obligations if a Cause Event occurred or if Worley breached the Restrictive Covenants.

Further, when determining whether to dissolve a contract, courts must also consider other factors, such as partial performance, the extent and gravity of the failure to perform, the nature of the obligor's fault, the good or bad faith of the parties' involved, and whether the circumstances indicate that the request for dissolution is merely an attempt to avoid the terms of an agreement bargained for to seize potentially better economic opportunities. *Waseco*, 371 So.2d at 308-09. Under these factors, dissolution would not be an appropriate remedy even if Worley could prove that WCS breached the Separation Agreement (which he cannot). Among other reasons, dissolution is inappropriate here because WCS already has performed under the agreement, has acted in good faith, and dissolving the agreement would allow Worley to benefit from his own bad behavior by escaping the obligations he undertook in the agreement. La. Civ. Code art. 2018. Damages or specific performance, not dissolution, would be the appropriate remedies if Worley could prove that WCS failed to perform under the parties' contract.

Because Worley will be unable to show *either* that he is substantially likely to prove that WCS breached the Separation Agreement *or* that he is entitled to dissolution upon proof of a breach, the Court should find that he is not entitled to the injunctive relief he seeks.

### b. Worley will not suffer irreparable harm if the requested injunction does not issue.

An irreparable injury is one which cannot be redressed by a legal or equitable remedy following trial. The preliminary injunction must be the only way of protecting the plaintiff from such harm. *Torries v. Hebert*, 111 F.Supp.2d 806, 813 (W.D. La. 2000). An injury generally is considered to be irreparable if it cannot be compensated in money damages. *ADT, LLC v. Capital Connect, Inc.,* 145 F.Supp.3d 671, 694 (N.D. Tex. Oct. 28, 2015); *see also Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.")

Here, Worley essentially concedes that the harm he seeks to prevent is pecuniary in nature and can be compensated by money damages if he ultimately succeeds in establishing that WCS breached the Separation Agreement. In this regard, he claims that if the Court does not enjoin WCS from enforcing the restrictive covenants in the Separation Agreement, he will lose the opportunity to earn between $3,500,000 and $5,000,000 annually. Worley seemingly is arguing that the Court should overlook the fact that the damages he claims he will suffer can be compensated in money damages (and, thus, are not "irreparable" by definition) because of the magnitude of the earnings he claims that he stands to lose. The Court should reject this argument, though, because, as the Fifth Circuit Court of Appeals has explained:

> Federal courts have long recognized that, when "the threatened harm is more than de minimis, it is not so much the magnitude but the irreparability that counts for purposes of a preliminary injunction." In short, "the key word . . . is *irreparable*," and an "injury is 'irreparable' only if it cannot be undone through monetary remedies." Thus, "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

*Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472-473 (5th Cir. 1985). [Emphasis in original.]

### c. Any injury Worley claims he will suffer does not warrant depriving WCS of the benefit for which it bargained.

Worley contends that WCS will suffer "no harm" if the preliminary injunction issues, but fails to make any convincing argument that his contention is, in fact, true. If anything, Worley's pleadings suggest the opposite. Specifically, Worley's motion confirms that if the Court grants him the relief he seeks, he intends to immediately return to work handling catastrophic claims and to become a business competitor of WCS's. While Worley suggests that WCS's management team and business model has changed, he does not deny—because he cannot—that WCS is engaged in the catastrophic claims business and that he contemplates "form[ing] a business that specializes in catastrophic claims" if the Court will allow it. Prohibiting Worley from engaging in a competing business and from soliciting WCS's customers and employees was one of the motivations for WCS to obligate itself under the Separation Agreement. WCS will not speculate about the extent to which Worley would be successful in any competitive endeavor or about the extent of the harm WCS may suffer if the Court grants him the relief sought. However, it is unlikely that WCS would suffer "no harm" if the Court were to deprive it of the benefit for which it bargained and issue the requested injunction.

### d. Granting the injunction would disserve the public interest in enforcing contracts.

Worley devotes considerable attention to arguing about the extent to which the public will benefit if he is permitted to escape his non-compete and non-solicitation obligations and "form a business that specializes in catastrophic claims." But his argument overlooks the fact that other companies—including WCS—already are providing the public service he seeks to

provide. The public does not need Worley to be able to compete with WCS and to solicit its customers to ensure that victims of disasters can timely settle claims. Moreover, whatever interest the public may have in allowing Worley to return to work as a casualty claims adjuster, is outweighed by the public interest in enforcing contracts and ensuring that parties receive the benefit for which they bargained.

### e. Worley should be required to post a bond if a preliminary injunction issues.

The Court has the discretion to require Worley to post a bond upon issuance of any preliminary injunction. *See* Fed. R. Bankr. P. 7065. Although the requirement to post a bond is not mandatory, some courts have held that the requirement to consider whether a bond should be posted is. *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987) (explaining that until the trial court considers "whether the circumstances of a particular case justify … leaving the enjoined party bereft of security," it has not completed the task required by Federal Rule of Civil Procedure 65(c)).

The bond serves the purpose of providing security to cover the costs and damages that may be incurred by the enjoined party if the court later determines the preliminary injunction should not have issued. *See* Fed. R. Bankr. P. 7065. Without a bond or other form of security, the enjoined party generally is not permitted any recovery in the event of a wrongful injunction. *In re UAL Corp.*, 412 F.3d 775, 779 (7th Cir. 2005).

In his moving papers, Worley seeks permission to compete with WCS and to solicit its business. He suggests he will be able to earn more than $3,500,000 annually doing just that. If Worley is to be believed, then it is reasonable to conclude that some of the business he handles or services for a WCS competitor would be business that WCS otherwise would have or would have the opportunity to seek. If the Court permits Worley to compete and he succeeds in taking

business away from WCS, but Worley is not required to post a bond or other form of security, and the court later determines WCS should not have been enjoined from enforcing the restrictive covenants for which it bargained and paid Worley to honor, then WCS may be left without a remedy. If the Court is inclined to grant Worley's request for a preliminary injunction, then it should order Worley to post a bond to prevent that potentially inequitable result.

### III. Conclusion

Worley is unlikely to be able to establish any of the elements required to support issuance of a preliminary injunction—let alone all of them. Because Worley will be unable to meet his heightened burden to prove that he is clearly entitled to the preliminary injunctive relief he seeks, the Court should deny his request to alter the status quo by preliminarily enjoining WCS from enforcing the Restrictive Covenants incorporated in the Separation Agreement.

Respectfully submitted:

**ADAMS AND REESE LLP**

By:*/s/ John M. Duck*
John M. Duck, LA Bar Roll No. 5104
Elizabeth A. Roussel, La. Bar Roll No. 27943
ADAMS AND REESE LLP
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Mr. Duck's Ph: (504) 585-0226
Mr. Duck's Fax: (504) 566-0210
Ms. Roussel's Ph: 504-585-0445
Ms. Roussel's Fax: 504-566-0210
Email: john.duck@arlaw.com
Email: elizabeth.roussel@arlaw.com

AND

>Patrick L. McCune, La. Bar Roll No. 31863
>ADAMS AND REESE LLP
>450 Laurel Street, Suite 1900
>Baton Rouge, LA  70801
>Telephone: (225) 378-3215
>Fax: (225) 336-5110
>Email: patrick.mccune@arlaw.com
>
>*Attorneys for Worley Claims Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion has been served upon all persons or entities receiving notice via the court's CM/ECF electronic filing system, including, but not limited to, the following:

Court Electronic notification

- Scott Holland Crawford, counsel for plaintiff, Michael Allen Worley, scott@crawfordlaw.legal
- Arthur A. Vingiello, counsel for plaintiff, Michael Allen Worley, avingiello@steffeslaw.com

>*/s/ John M. Duck*
>John M. Duck